```
                                        UNITED STATES DISTRICT COURT
                                        SOUTHERN DISTRICT OF TEXAS
         UNITED STATES DISTRICT COURT         ENTERED
         SOUTHERN DISTRICT OF TEXAS
              HOUSTON DIVISION             MAY 16 2000

UNITED STATES OF AMERICA,       §          Michael N. Milby, Clerk
                                §
         Plaintiff,             §
                                §
v.                              §          CIVIL NO. H-98-1488
                                §
WILLIAM HAROLD MACK, M.D.,      §
                                §
         Defendant.             §
```

**MEMORANDUM OPINION**

Before the court[1] is Plaintiff's Motion for Summary Judgment.[2] The court has considered the motion, all relevant filings, and the applicable law. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is GRANTED.

### I. Case Background

Plaintiff brings this action under the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, alleging that Defendant submitted false claims for payment under the Medicaid program and the Civilian Health and Medical Program of the Uniformed Service ("CHAMPUS") for dates of service between, and including, May 16, 1992, and August 4, 1995. In its Complaint,[3] Plaintiff also seeks relief for conspiracy to defraud the government, common law fraud, payment under mistake of fact, and unjust enrichment.

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73. Docket Entry Number ("DEN") 8.

[2] DEN 45.

[3] DEN 1.

1

Defendant is a licensed pediatrician whose patient population is composed primarily of Medicaid beneficiaries. Defendant operated two Houston area clinics during the time period pertinent to this lawsuit. Defendant claims that, at one time, he was known in the Houston medical community as "the Medicaid doctor."[4] Thus, he became very involved in the policy development and administration of Medicaid. Defendant considers himself to be a Medicaid care expert who has comprehensive knowledge of the Medicaid Program.[5] As a Medicaid provider, he participated in the Early Periodic Screening, Diagnosis, and Treatment ("EPSDT") program which provides routine testing for Medicaid-eligible children.

The United States contracts with National Heritage Insurance Company ("NHIC") to serve as a fiscal intermediary for the review and payment of Medicaid provider claims. Record evidence indicates that NHIC periodically audited Defendant's medical records and monitored his billing. Letters addressed to Defendant from NHIC, sent over the years 1978 to 1987, focus on correcting billing errors and educating Defendant on proper billing practices.[6]

All of the violations of the FCA alleged by Plaintiff were discovered during an investigation by John Hoover ("Hoover"), an

---

[4] Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), DEN 45, Ex. C ("Defendant's Deposition"), p. 21.

[5] Id. at pp. 21-22.

[6] See Plaintiff's Motion, DEN 45, Exs. C-1 to C-10, correspondence between NHIC and Defendant.

investigator with the Medicaid Fraud Control Unit ("MFCU").[7] Hoover began the investigation in response to information suggesting that Defendant's patients did not receive the services for which Medicaid had been billed. Medicaid routinely mails explanation of benefit ("EOB") questionnaires to its beneficiaries, requesting verification that the services billed by the provider were performed. According to Plaintiff, several of Defendant's patients responded to these questionnaires by indicating that they had not received some of the billed services. Further, Hoover found that Defendant's Medicaid income had increased by nearly $500,000 from 1991 to 1992 and that he was billing for significantly more Medicaid services than other physicians in the area.

In response to this information, Hoover performed a partial audit of Defendant's medical records. After Hoover's initial visit to Defendant's office, one of Defendant's periodic employees, Sandra King ("King"), admitted that she had falsified some documentation in Defendant's patient files. Hoover arranged to have King wear a concealed recording device while she assisted other office personnel in preparing files for Hoover's review. The resulting tapes did not produce evidence that Defendant ordered his staff to falsify patient records, but did include discussions between employees on the subject of falsifying documents. Based on the information obtained by Hoover, a search warrant was issued.

---

[7] The facts recounted here are based primarily on Hoover's investigative report, Hoover's deposition testimony, and Defendant's deposition testimony. Plaintiff's Motion, DEN 45, Exs. B, B-1, and C.

3

On May 25, 1994, MFCU seized 14,529 patient records, four computer billing systems, laboratory logs, appointment books, and other records. Hoover reviewed approximately 1,000 of these files by comparing the billing claims to the services documented in the charts. Hoover discovered discrepancies in the billing for EPSDT screens and other Medicaid services.

The bulk of the allegedly fraudulent billing was related to the EPSDT screens. In some cases, Hoover found no documentation that the billed EPSDT screen had been performed at all; in others, he found that required laboratory work had not been completed. The Medicaid Provider Procedures Manual ("the Manual")[8] outlines the required components of EPSDT screens and indicates that providers will not be paid for incomplete screens. According to the Manual laboratory procedures, blood work is required at regular age intervals as part of the EPSDT screening process. Defendant admits that he routinely billed for EPSDT screens performed on patients who were due to have laboratory services, but from whom he did not collect blood specimens.[9] Defendant claims that he did EPSDT screens at neighborhood centers where it was difficult to collect blood specimens.[10] He also claims no other doctors were performing the laboratory tests.[11] On the claims Defendant submitted for these

---

[8]  Plaintiff's Motion, DEN 45, Ex. C-11, excerpts from the Manual. An excerpt from the Manual, including the Periodicity Schedule of required EPSDT procedures, was attached to a 1987 letter from NHIC to Defendant.

[9]  Defendant's Deposition, pp. 60-63, 65-66.

[10]  Id. at 61-63.

[11]  Id. at p. 62.

patients, he indicated that the laboratory work was "pending."[12] Medicaid notified providers that they were not required to hold claims until laboratory results were back.[13] The providers were instructed to use the term "pending" to indicate that the blood specimens were collected, but the laboratory had not returned the test results.[14] Defendant asserts that he was instructed to use the term "pending" for EPSDT claims when the blood specimens were never collected.[15] Plaintiff claims that Defendant was overpaid by $233,320 for incomplete EPSDT services.[16]

Plaintiff alleges that, in addition to incomplete EPSDT screens, Defendant billed Medicaid for other services not documented in the corresponding patient file. According to Plaintiff, these services included strep tests, acoustic reflex exams, and tympanograms. Allergy screening tests consistently were upcoded to the highest reimbursement level regardless of the number of antigens tested. Defendant billed for office visits which were not charted. Further, bills were submitted for procedures performed at Defendant's in-house laboratory, which is not Clinical Laboratory Improvement Act certified, as required for reimbursement. Some of Defendant's billing diagnosis codes did not match charted diagnosis codes. Hoover discovered that this

---

[12]   Id. at p. 71.

[13]   Plaintiff's Motion, DEN 45, Ex. B-2, Texas Medicaid Bulletin.

[14]   Id.

[15]   Defendant's Deposition, pp. 71-72.

[16]   Plaintiff's Motion, DEN 45, Ex. A, Hoover's Affidavit.

discrepancy corresponded with the occurrence of a noncovered charted diagnosis. Plaintiff claims that Defendant was overpaid by $21,113.31 for these services.[17]

Another category of the alleged false claims filed by Defendant is patient services billed to CHAMPUS through its fiscal intermediary, Wisconsin Physicians Services. In a cooperative effort with Hoover, George Fifer ("Fifer"), who is a special agent for the Department of Defense Criminal Investigative Service, reviewed CHAMPUS patient files. Plaintiff claims that certain billings to CHAMPUS under Defendant's provider number were false in that the services were not performed by Defendant as required for payment. Plaintiff claims that Defendant was overpaid by $3516.00 for such services.[18]

In total, Plaintiff alleges that Defendant falsely billed and improperly received payment for over $250,000 for services performed between May 16, 1992, and August 4, 1995. Plaintiff initiated this lawsuit on May 13, 1998. On November 30, 1999, after the completion of discovery, Plaintiff filed a motion for summary judgment on counts one and two.

## II. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), the party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that the movant is entitled to judgment as

---

[17]  Id.

[18]  Fifer's Declaration, DEN 47.

6

a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of genuine factual issues. FED. R. CIV. P. 56(c); Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992), cert. denied, 506 U.S. 825 (1992).

If the movant meets this burden, then the opposing party must go beyond the pleadings and proffer evidence which demonstrates that genuine issues of material fact do exist which must be resolved at trial. Celotex Corp., 477 U.S. at 324. A material fact is a fact which is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. Id. at 250. Although evidence used by the nonmoving party to avoid summary judgment need not be in a form which would be admissible at trial, affidavits supporting and opposing summary judgment must be made on personal knowledge and provide facts which would be admissible in evidence. FED. R. CIV. P. 56(e); Celotex Corp., 477 U.S. at 324.

When determining whether any dispute exists, the court must view the "facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party." Meinecke v. H & R Block of

7

Houston, 66 F.3d 77, 81 (5th Cir. 1995). The nonmoving party must show more than some metaphysical doubt as to the material facts. Id. Conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence will not carry this burden. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

### III. Defendant's Objections to the Summary Judgment Evidence

Before addressing the substantive merits of Plaintiff's motion, the court must respond to Defendant's objections to the competency and admissibility of Plaintiff's summary judgment evidence. In support of its summary judgment motion, Plaintiff relies on: 1) the affidavit of Hoover; 2) the deposition of Hoover and exhibits; 3) the deposition of Defendant and exhibits; 4) the affidavit of Billy Millwee ("Millwee"), Director of the Texas Health Steps program (formerly known as the EPSDT program) and attachments; 5) the affidavit of Sandra Navarro ("Navarro"), Texas Department of Health Bureau of Labs Section Chief for Data Entry and Reporting; 6) the affidavit of Mary Ann Wallace ("Wallace"); 7) the voluntary statement of Maria Lewis-Sterling, a nurse who provided EPSDT screens under Defendant's sponsorship; 8) the declaration by Linda A. Evans ("Evans"), an auditor/investigator in the Civil Division of the United States Attorney's Office for the Southern District of Texas; and 8) the declaration of Fifer.

Defendant objects to the majority of this evidence, for a variety of reasons. Primarily, Defendant argues that: 1) the lay witnesses do not have personal knowledge or are not qualified to give parts of the proffered testimony; 2) some of the testimony is

8

hearsay; and 3) certified copies of all of the documents referenced in the affidavits are not attached as required by FED. R. CIV. P. 56(e).

Although the court agrees that some statements in the affidavits of Hoover and Navarro arguably are given without personal knowledge or sufficient expertise, those statements offer background information not material to the resolution of this case. Likewise, the legal conclusions regarding the running of the statute of limitations in the affidavit of Evans are not material. The court does not rely on any inadmissible statements contained within those affidavits. Millwee is not offered as an expert by Plaintiff, but as a lay witness with personal knowledge of the policies and procedures of Texas Health Steps (formerly EPSDT). Millwee's affidavit serves as competent summary judgment evidence.

Defendant also argues that the documentation of the communication between NHIC and Defendant on the subject of billing discrepancies is inadmissible hearsay. However, the letters are not submitted for the truth of their content, but to show a pattern of intervention and education that put Defendant on notice as to acceptable billing practices and the shortcomings of his billing system. Fifer's declaration fits within the hearsay exception for public records and reports to the extent that it includes statements of factual findings resulting from Fifer's investigation. FED. R. EVID. 803(8).

Finally, Defendant takes issue with Plaintiff's failure to attach all papers mentioned in the affidavits. For example,

Hoover's affidavit discusses his investigation and the conclusions he reached based on his review of the claims submitted by Defendant, patient files, the Manual, and other documentation. Plaintiff fails to attach certified copies of any of those papers. Navarro's affidavit mentions the Manual and records of Defendant's laboratory submissions, none of which is attached. Also, Plaintiff fails to attach the 5,873 EPSDT claims which underlie the record reviews performed by Wallace and Evans, the results of which are reported in their affidavits. These objections are overruled. The missing documentation is cumulative of competent summary judgment evidence in the depositions of Hoover and Defendant and the deposition exhibits, to which Defendant raises no objection.

## IV. False Claims Act

The FCA imposes civil penalties on any person who knowingly presents or causes to be presented to the federal government a false claim for payment. 31 U.S.C. § 3729(a)(1). Likewise, any person who makes or uses a false record or statement in order to get a fraudulent claim paid is liable under the FCA. 31 U.S.C. § 3729(a)(2). A "claim" is any request for money, a part of which is provided or reimbursed by the United States Government. 31 U.S.C. § 3729(c).

To act "knowingly," a person must have presented the claim with actual knowledge of its falsity, presented it with deliberate ignorance of the truth or falsity, or presented it with reckless disregard of the truth or falsity. 31 U.S.C. § 3729(b). The statute does not require proof of specific intent to defraud. 31

10

U.S.C. § 3729(b). To fall within the statute, the billing provider must manifest, at a minimum, "an extreme version of ordinary negligence" in the submission of false claims. United States v. Krizek, 111 F.3d 934, 942 (D.C. Cir. 1997). Congress intended for the statute to cover persons who refuse "to learn of information which an individual, in the exercise of prudent judgment, had reason to know" and persons who ignore obvious warning signs. UMC Electronics Co. v. United States, 43 Fed. Cl. 776, 793 (Fed. Cl. 1999) (quoting S. REP. No. 99-345, at 21 (1986)). The statute does not excuse defendants who claim the defense of confusion over billing practices or records, but also does not punish those who make innocent mistakes. Id. at 793, 795; see also Hagood v. Sonoma County Water Agency, 81 F.3d 1465, 1478 (9th Cir. 1996), cert. denied, 519 U.S. 865 (1996).

In order to prevail, a plaintiff must establish, by a preponderance of evidence, that: 1) the defendant presented a claim to the United States for payment; 2) the claim was false; 3) the defendant knew, as defined by the FCA and case law, that the claim was false. United States ex rel. Oliver v. The Parsons Co., 195 F.3d 457, 461 (9th Cir. 1999), petition for cert. filed, 68 U.S.L.W. 3491 (U.S. Jan. 20, 2000) (No. 99-1225).

### V. Analysis

Plaintiff asserts that Defendant violated the FCA by filing Medicaid and CHAMPUS claims for screens and tests which, contrary to what was indicated on the billing submissions, were actually incomplete, never were performed, or were performed by an

11

unauthorized provider or laboratory. Defendant does not dispute that he made claims for payment under the Medicaid and CHAMPUS programs, both of which are subsidized by the federal government.

The claims submitted by Defendant were indisputably false. Defendant admits he routinely did not perform the EPSDT laboratory work as required by the Manual for provider reimbursement of EPSDT screens.[19] NHIC directed Defendant's attention to these requirements in 1987 when the associate medical director sent Defendant a copy of the Periodicity Schedule for EPSDT procedures.[20] Defendant admits that he wrote "pending" on claims without regard to whether the required blood specimens were collected for analysis.[21] According to written Medicaid procedures, "pending" means awaiting the results of the laboratory work.[22] Defendant states that, had he indicated on the claims that the laboratory work was not completed, he does not know if he would have been paid for the EPSDT claims.[23] The Manual plainly notifies providers that Medicaid will not reimburse providers for incomplete EPSDT screens.[24]

Additionally, Plaintiff presents competent summary judgment evidence showing that: 1) patients reported to Medicaid that they

---

[19]   Defendant's Deposition, pp. 60, 65.

[20]   Plaintiff's Motion, DEN 45, Ex. B-3.

[21]   Defendant's Deposition, pp. 71-72.

[22]   See Plaintiff's Motion, DEN 45, Ex. B-2, Texas Medicaid Bulletin.

[23]   Defendant's Deposition, pp. 73-74.

[24]   Plaintiff's Motion, DEN 45, Ex. C-11, p. 181.

12

had not received all of the services for which Defendant billed;[25] and 2) Defendant's patient records did not contain documentation that indicated he had performed those and other services billed to Medicaid.[26] Defendant offers no evidence that he performed the identified allergy screening tests, strep tests, acoustic reflex exams, and tympanograms as billed. Defendant speculates that those parents who reported on the Medicaid EOBs that certain billed tests were not completed, simply were not sufficiently attentive during the examination to notice what tests were being performed.[27] He added, apparently sarcastically, that the efficiency with which his office operated during that time could account for lost diagnostic printouts from the tympanometry and acoustic reflex tests.[28] Defendant does not deny and fails even to give an explanation for submitting CHAMPUS bills for services which he did not perform.

Defendant concludes his response to Plaintiff's motion by suggesting that King may have sabotaged his files.[29] Defendant

---

[25] Plaintiff's Motion, DEN 45, Ex. B, Hoover's Deposition; Ex. B-1, Hoover's Investigative Report; Ex. C-14, EOBs.

[26] Plaintiff's Motion, DEN 45, Ex. B, Hoover's Deposition; Ex. B-1, Hoover's Investigative Report.

[27] Defendant's Deposition, p. 85.

[28] Id. at p. 86.

[29] The court wishes to remind Defendant's counsel of the FED. R. CIV. P. 11 mandate that any allegations made in signed submissions to the court must have "evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." This motion was filed after the completion of discovery. Defendant's representation that "a factual issue can be raised as to why the documentation was missing from the files" based on what is nothing more than hypothetical possibilities comes dangerously close to violating this rule.

13

offers all of these excuses without proffering a stitch of evidence. Based on the evidence produced by Plaintiff and the lack of evidence from Defendant, the court finds that Defendant submitted false claims.

The remaining element of an FCA claim, to wit, knowledge that the claims were false, is the source of greater contention between the parties. The issue is whether Defendant actually knew, deliberately ignored, or recklessly disregarded the falsity of the claims he submitted.

As to this element, Defendant's response focuses only on his submission of claims for the incomplete EPSDT screens. Defendant claims that he had a "reasonable explanation as to why he failed to draw blood as part of his EPSDT exams."[30] He argues that he was authorized to bill for completed EPSDT exams despite his failure to collect blood specimens and that he was instructed to use the term "pending" in a manner wholly contrary to Texas Medicaid Bulletin instructions, not to mention contrary to common usage.[31] As

---

[30] Defendant's Response, DEN 49.

[31] The court finds it hard to believe that a very knowledgeable pediatrician would accept without further investigation such a contrary meaning for the phrase "lab work completed, results pending." In his deposition, Defendant explains how he finds the instructions in the Texas Medicaid Bulletin to be vague. In response to a question asking what other interpretations he saw, Defendant said,
> "Well, actually it could mean that because of a backlog-there was a time when the lab was woefully overwhelmed with lab studies or the mail system did not get them. Whatever those reasons were, and all of those were listed. And there were physicians who had-whose work never reached the lab or the lab never recorded them. And their payments were held up because of that glitch in the lab. I suppose that this is an answer to those concerns by providers."

He then admitted that nothing in the instructions implies that providers do not have to perform the laboratory tests. Defendant's Deposition, pp. 89-90.

14

evidence of his explanation, Defendant offers his own deposition testimony, a consent decree from an unrelated lawsuit, and the affidavit of Linda Jolivette, a former account representative for NHIC. The court finds that no genuine issue of material fact is raised by any or all of this evidence.

First of all, Defendant's testimony lacks any details and, therefore, does not meet the FED. R. CIV. P. 56(e) standard of coming forward with "specific facts showing that there is a genuine issue for trial." Cf. United States v. Cripps, 460 F.Supp. 969, 973 (E.D. Mich. 1978); United States v. Kates, 419 F.Supp. 846, 854 (E.D. Pa. 1976). The affidavit of Jolivette and the unrelated consent decree offer no support to Defendant's position. Such "evidence" does not suggest that NHIC, the State of Texas, or Medicaid instructed Defendant not to perform the laboratory work or that any of those entities condoned billing for incomplete exams. Even if Defendant could supply the court with a name and affidavit or some documentary evidence, he would still fall short of exonerating himself. The unauthorized actions of an agent of NHIC or of the State of Texas cannot be imputed to the federal government to preclude suit under the FCA. Cf. Cripps, 460 F.Supp. at 974; Kates, 419 F.Supp. at 854. Any such agent purporting to authorize Defendant to submit false claims or to violate the Manual was acting outside his or her authority. Cf. Cripps, 460 F.Supp. at 974; Kates, 419 F.Supp. at 854. In its worst light, such evidence suggests a conspiracy to defraud the federal government. That aside, the intent requirement of the FCA focuses on

Defendant's knowledge that he presented a false claim, not on whether Defendant intended to deceive. See <u>United States ex rel. Kreindler & Kreindler v. United Technologies Corp.</u>, 985 F.2d 1148, 1156 (2d Cir. 1993), <u>cert. denied</u>, 508 U.S. 973 (1993). That is to say, knowledge of the falsity of the claim by government officials is not a defense by itself. <u>United Technologies Corp.</u>, 985 F.2d at 1156; <u>United States ex rel. Hagood v. Sonoma County Water Agency</u>, 929 F.2d 1416, 1421 (9th Cir. 1991).

Even if Defendant did not have actual knowledge of the falsity of his claims, he showed reckless disregard to their truth or falsity by failing to provide adequate supervision of his billing staff. <u>Cf.</u> <u>Krizek</u>, 111 F.3d at 942. The correspondence between NHIC and Defendant shows Defendant had knowledge of previous deviant billing practices and certainly was on notice to review and carefully consider his billing submissions. Yet, he failed to hire full time billing staff,[32] to train his part time staff,[33] or even to read or to require his staff to read the Manual which embodied the contractual reimbursement agreement between Medicaid and providers.[34] <u>Cf.</u> <u>Krizek</u>, 111 F.3d at 942; <u>United States v. Hercules, Inc.</u>, 929 F.Supp. 1418, 1423 (D. Utah 1996). Nothing in Defendant's testimony or other submitted evidence counters Plaintiff's factual allegations.

---

[32] Defendant's Deposition, pp. 43-44.

[33] Of the four or more staff persons who handled the billing during the pertinent time period, only King received any formalized training on Medicaid billing, according to Defendant. <u>Id.</u> at pp. 16-19.

[34] <u>Id.</u> at pp. 34-35, 53.

16

Plaintiff has shown that no genuine issue of material fact exists and that Plaintiff is entitled to judgment as a matter of law. See Celotex Corp., 477 U.S. at 322. Defendant has failed to proffer any evidence which demonstrates that genuine issues of material fact do exist. See id. at 324. Even when the facts are viewed in a light most favorable to Defendant, the court finds that Defendant has not provided evidence with enough force to entitle him to a trial.

## VI. Conclusion

For the foregoing reasons, the court GRANTS Plaintiff's Motion for Summary Judgment.

SIGNED at Houston, Texas, this 15th day of May, 2000.

NANCY K. JOHNSON
UNITED STATES MAGISTRATE JUDGE

17